IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**BILLY RAY BIBBS,** **PLAINTIFF**

**V.** **CIVIL ACTION NO. 3:14-CV-222-SAA**

**COMMISSIONER OF SOCIAL SECURITY,** **DEFENDANTS**

## MEMORANDUM OPINION

Plaintiff Billy Ray Bibbs has applied for judicial review under 42 U.S.C. § 405(g) of the Commissioner of Social Security's decision denying his application for a period of disability (POD) and disability insurance benefits (DIB) under Sections 216(I) and 223 of the Social Security Act.[1] Plaintiff protectively filed an application for benefits on March 29, 2011 alleging disability beginning on March 27, 2009. Docket 9, pp. 209-15. The agency administratively denied the plaintiff's claim initially and upon reconsideration. Docket 9, pp. 150-53. Plaintiff then requested an administrative hearing, which an Administrative Law Judge (ALJ) held on May 23, 2013. Docket 9, p. 70. The ALJ issued an unfavorable decision on June 10, 2013 (Docket 9, pp. 5-26), and the Appeals Council denied plaintiff's request for a review on August 11, 2014, Docket 9, p. 1. Plaintiff timely filed the instant appeal from the decision and it is now ripe for review.

Because both parties have consented to a magistrate judge conducting all the proceedings in this case as provided in 28 U.S.C. § 636(c), the undersigned has the authority to issue this opinion and the accompanying final judgment.

---

[1] Although plaintiff's brief indicates that plaintiff also claims benefits for supplemental security income (SSI) payments under Section 1614(a)(3) of the Act, it does not appear that he sought SSI benefits at the administrative level.

# I. FACTS

Plaintiff was born November 26, 1963 and was forty-nine years old at the time of the ALJ hearing. Docket 9, p. 74. He was previously employed as a maintenance and lawn care worker for approximately eighteen years. Docket 9, p. 76. Plaintiff contends that he became disabled before his application for benefits as a result of diabetes mellitus, diabetic neuropathy, arthralgia, obesity, hypertension, carpal tunnel syndrome, and severe obstructive sleep apnea.

After reviewing the record as a whole, including the evidence and testimony provided, the ALJ issued her unfavorable opinion on June 10, 2013. Docket 9, pp. 5-26. Within that opinion, the ALJ determined that plaintiff had met the insured status requirement through December 31, 2011. Docket 9, p. 10. In evaluating the plaintiff's disability claim, the ALJ proceeded through the Social Security Administration's five-step sequential evaluation process. 20 C.F.R. 404.1520(a); *see also* Docket 9, pp. 8-26. From that process the ALJ determined that through the date last insured (DLI) the claimant suffered from the "severe" impairments of "diabetes mellitus, diabetic neuropathy, arthralgia, obesity, hypertension, and carpal tunnel syndrome," (Docket 9, p. 10), but that these impairments did not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, App. 1 (20 CFR 404.1520(d), 404.1525, and 404.1526). Docket 9, p. 12.

Upon further analysis under the applicable rulings and regulations, the ALJ determined that plaintiff was less than fully credible because his claimed symptoms, stated limitations and subjective complaints—particularly concerning the intensity, persistence, and limiting effects of those ailments—were not credible. Docket 9, p. 17. The ALJ similarly concluded that testimony from plaintiff's wife warranted little weight because that testimony was not supported "by the objective or clinical medical evidence or with the activities of daily living described during [a]

June 2011 consultative examination" of Dr. Justin Brewer. Docket 9, p. 19. The ALJ also elected to assign little weight to testimony provided by the plaintiff's brother in the form of a written letter because he was "not a disinterested third party and disabling pain and functional limitations are not well supported by objective medical findings." Docket 9, p. 18.

The plaintiff claims the ALJ erred in (i) her credibility findings based on an incorrect assessment of plaintiff's testimony about his driving habits and her rejection of the plaintiff's brother's statements; (ii) formation of the plaintiff's RFC, and (iii) relying on improper VE testimony concerning the dictionary of occupational titles.

## II. EVALUATION PROCESS

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520. The burden to prove disability rests upon plaintiff through the first four steps of the process and if plaintiff is successful in sustaining his burden at each of the first four levels, the burden then shifts to the Commissioner at step five. *See Crowley v. Apfel,* 197 F.3d 194, 198 (5th Cir. 1999). First, the plaintiff must prove he is not currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). Second, the plaintiff must prove his impairment(s) are "severe" in that they "significantly limit[] his physical or mental ability to do basic work activities . . .." 20 C.F.R. § 404.1520(c). At step three the ALJ must conclude that the plaintiff is disabled if he proves that his impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.09 (2010). 20 C.F.R. § 404.1520(d). If the plaintiff does not meet this burden, at step four he must prove he is incapable of meeting the physical and mental demands of his past relevant work. 20 C.F.R. § 404.1520(e). Finally, at step five, the burden shifts to the Commissioner to prove that, considering plaintiff's residual functional capacity, age, education

and past work experience, she is capable of performing other work. 20 C.F.R § 404.1520(g). If the Commissioner proves other work exists which plaintiff can perform, plaintiff is then given the chance to prove that he cannot, in fact, perform that work. *See Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).

### III. STANDARD OF REVIEW

The court's scope of review is limited. On appeal the court must consider whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Crowley*, 197 F.3d at 196, citing *Austin v. Shalala*, 994 F.2d 1170 (5th Cir. 1993); *Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th Cir. 1990). In making that determination, the court has the responsibility to scrutinize the entire record. *Ransom v. Heckler*, 715 F.2d 989, 992 (5th Cir. 1983). The court has limited power of review and may not reweigh the evidence or substitute its judgment for that of the Commissioner, *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988), even if it finds the evidence leans against the Commissioner's decision. *See Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *see also Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

The Fifth Circuit has held that substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Crowley*, 197 F.3d at 197 (citation omitted). Conflicts in the evidence are for the Commissioner to decide, and if there is substantial evidence to support the decision, it must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court's inquiry is whether the record, as a whole, provides sufficient evidence that would allow a reasonable mind to accept the ALJ's conclusions. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Crowley*, 197 F.3d at 197. "If supported by

substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed." *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994), citing *Richardson*, 402 U.S. at 390.

## IV. DISCUSSION

### A. Whether the ALJ properly considered plaintiff's credibility.

The ALJ found that the plaintiff was not a reliable witness and elected to give little weight to the opinions of the plaintiff's wife and brother. Docket 9, pp. 17-19. The plaintiff contends that the ALJ erred in making those determinations because she made incorrect assessments of testimony provided by all three of those people. Docket 13, pp. 7-14.

As to both plaintiff's credibility determination and her decision to give little weight to the plaintiff's wife's testimony, the ALJ found that plaintiff's claimed disabilities were inconsistent with his reported activities of daily living. She noted that although the plaintiff's wife testified as to the very limited and disabling nature of plaintiff's abilities, the claimant testified that he continues to "drive over 80 miles each wa[y] to Grenada, and wait there during the day with friends while his wife works." Docket 13, p. 7. In fact, the plaintiff actually testified that he drove "16, 17 miles" each way to take his wife to work each day. The plaintiff claims this mischaracterization of his testimony requires reversal of the ALJ's decision. Docket 13, p. 99. This claim is without merit however, as the mistake by the ALJ is protected under the harmless error rule, which the Fifth Circuit has long followed in social security cases. *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988), citing *Carter v. Massey-Ferguson, Inc.*, 716 F.2d 344, 349 (5th Cir. 1983 ("Procedural perfection in administrative proceedings is not required" as long as "the substantial rights of a party have not been affected."). Furthermore, the Circuit has made clear that the harmless error rule may be applied in the context of the ALJ's credibility analysis as well. *See Frank v. Barnhart*, 326 F.3d 618 (5th Cir. 2003). Thus, even though the ALJ incorrectly reported plaintiff's testimony regarding his daily driving in making her

5

determinations, that mistake is only grounds for reversal if it affected the substantial rights of the plaintiff, which it did not here.

Plaintiff's substantial rights were not affected because the ALJ's determination that the plaintiff's claimed impairments were inconsistent with his activities of daily living was substantially justified considering even the plaintiff's actual testimony. Though the ALJ incorrectly reported the number of miles the plaintiff testified he drove each day, the number of miles does not appear to be the determinative factor in the ALJ's credibility decision or her decision to give little weight to the plaintiff's wife's opinion. Rather, the ALJ detailed the plaintiff's reported activities of daily living, which included his ability to drive a relatively long distance each day as only one factor. The inconsistencies between those activities and the alleged impairments claimed by both the plaintiff and his wife led to the ALJ's ultimate determination. *See* Docket 9, p. 13-20.

The claim that the ALJ made her determinations about credibility and the weight to give to the witnesses' testimony based solely on a misstatement of the amount of miles the plaintiff reported having driven is plainly inaccurate. The fact that the plaintiff continued to take his wife to work most days, wait for her while she worked, visited with friends and family or watched television until she got off from work, and then drove them back home was just one of the justifications for that finding. Docket 9, p. 17, 19. The substantial rights of the plaintiff were not affected by this harmless error because the ALJ did not rely solely on that misreported piece of testimony to reach her ultimate determinations. Instead, the ALJ relied on inconsistencies contained in various medical opinions spanning several years and in the plaintiff's testimony to reach her credibility and weight determinations. *See* Docket 9, pp. 13-21.

For instance, the ALJ noted that the plaintiff's medical records routinely and consistently documented relatively normal motor strength, hand grip strength, ranges of motion, and the ability to move about despite claiming otherwise. Docket 9, p. 17, 19. She also noted other inconsistencies in the plaintiff's medical treatment records; for example, plaintiff claims he suffers from blurred vision, but there is no indication of treatment for that condition in his medical records, and he has continuously reported that he drives and watches television regularly without any problems. Docket 9, p. 17. She also noted that even though plaintiff alleges rheumatoid arthritis, there are no objective medical signs, laboratory findings, or radiographic evidence to support those claims in the records. Docket 9, p. 17.

The ALJ also discounted the plaintiff's brother's statement. The plaintiff asserts this was error because the ALJ did not "acknowledge that she must consider all evidence, including that of lay witness testimony." Docket 13, p. 10. Plaintiff relies on SSR 06-3p, which provides that opinions of family members, including siblings, can be used to show the severity of impairments. SSR 06-3p certainly establishes that the opinions of family members *may* be used to establish the severity of impairments, but it does not force ALJs to give those opinions significant weight. The ALJ's role is to weigh conflicts in the evidence; if there is substantial evidence to support the decision, the court must affirm even if there is evidence on the other side. *Selders*, 914 F.2d at 617. Contrary to the plaintiff's assertion, the ALJ did not fail to acknowledge or consider the brother's opinion but simply declined to assign the opinion "great weight" when she considered the opinion in light of all the other evidence presented. Docket 9, pp. 18-19. She found the brother was "not a disinterested third party *and disabling pain and functional limitations are not well supported by objective medical findings*." Docket 9, pp. 18-19. Therefore, because

7

weighing the evidence is the ALJ's role and because conflicts in the evidence are for the Commissioner to decide, this claim is also without merit.

### B. Whether the ALJ erred in forming the plaintiff's RFC

The plaintiff claims the ALJ erred in several respects in formulating the plaintiff's Residual Functional Capacity (RFC). Docket 13, pp. 14-16. Upon judicial review, the ALJ's RFC determination is "granted great deference and will not be disturbed unless the reviewing court cannot find substantial evidence in the record to support the Commissioner's decision or finds that the Commissioner made an error of law." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *see also* 42 U.S.C.A. § 405(g). According to plaintiff, because the ALJ did not explicitly award significant weight to any medical opinion in forming the RFC, she must have substituted her opinion for that of medical professionals. Docket 13, p. 14-16. Moreover, says plaintiff, the ALJ should have ordered an additional consultative examination under 20 C.F.R. 404.1512(e) because she failed to assign significant weight to any medical opinion. Docket 13, p. 16. The court holds that the ALJ's RFC determination was consistent with the evidence of record, and she applied the proper legal standards.

The responsibility of determining the plaintiff's RFC belongs to the ALJ. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). In doing so, an ALJ must consider all the evidence in the record, evaluate the medical opinions in light of other information contained in the record, and determine the plaintiff's ability despite the claimant's physical and mental limitations. *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995). Despite the plaintiff's claim, the ALJ is not required to either grant significant weight to a medical opinion or order an additional consultative examination. Here, the ALJ considered no less than four professional medical sources in forming the plaintiff's RFC.

First, the ALJ considered records provided by Dr. Williams Owens. Docket 9, p. 14. Second, she considered in detail Dr. Jim Adams's report of a 2009 consultative examination where the bulk of his findings were relatively unremarkable. Docket 9, p. 15. Third, she considered 2010 treatment records from North Mississippi Family Medicine Group. Docket 9, p. 16. There, the ALJ observed that despite the plaintiff's subjective complaints, very little objective medical evidence could be found to back up plaintiff's alleged impairments. Docket 9, p. 16. Fourth, and finally, the ALJ considered Dr. Justin Brewer's consultative examination which, yet again, was short on objective findings and was ultimately consistent with the ALJ's RFC determination. Docket 9, p. 16. Within that RFC, the ALJ properly considered the findings of these medical sources and limited the Plaintiff to a modified range of light work. Docket 9, p. 17, 20. Because the ALJ properly considered the evidence as a whole, including various medical opinions, and therefore was not required to order an additional consultative examination, the court holds that the ALJ properly assessed the plaintiff's RFC.

### C. Whether the ALJ incorrectly relied on the VE's testimony.

The plaintiff also asserts that the ALJ incorrectly relied on Vocational Expert (VE) testimony in the formulating plaintiff's RFC [Docket 13, p. 16-19] because there was an unresolved conflict between the VE's testimony and the Dictionary of Occupational Titles (DOT). Docket 13, p. 19. The Commissioner contends, and the court agrees, that the ALJ fulfilled her obligation to inquire as to whether the VE's testimony would conflict with the DOT and that there was no definitive conflict between the VE's testimony and the DOT. Docket 14, p. 25-26.

The plaintiff concedes that the ALJ asked the VE to explain any conflicts between her testimony and the DOT, but argues the ALJ nonetheless relied on testimony that both conflicted

9

with the DOT and remained unresolved. Docket 13, p. 18. The plaintiff bases this claim that there was conflicting testimony on the idea that "when the DOT is silent on the issue of the alternating sitting and standing . . . this is an inherent conflict between the DOT and the [VE]'s testimony." Docket 13, p. 18. However, as this court has previously explained, "that the DOT does not use specifically describe a 'sit/stand option' does not necessarily create an inherent conflict when the ALJ's determination of a plaintiff's RFC provides for the option." *Melvin v. Astrue*, 2010 WL 908495 (N.D. Miss 2009), citing *Charles v. Astrue*, 291 Fed. Appx. 552 (5th Cir. 2008); *Sbiewski v. Astrue*, 302 Fed. Appx. 488, 494-95 (7th Cir. 2008). Furthermore, as the Commissioner correctly asserts, the Fifth Circuit has recognized that the DOT "cannot and does not purport to include each and every specific skill or qualification," and "should not be given a role that is exclusive of more specific vocational expert testimony with respect to the effect of an individual claimant's limitations on his or her ability to perform a particular job." *Carey v. Apfel*, 230 F.3d 131, 145 (5th Cir. 2000). Because no inherent conflict existed between the VE's testimony and the DOT, this claim is without merit.

## V. CONCLUSION

After diligent review, the court concludes that the ALJ's decision was supported by substantial evidence and applied the proper legal standards and therefore must be affirmed. A final judgment in accordance with this memorandum opinion will issue this day.

SO ORDERED, this the 9th day of June, 2015.

    /s/ S. Allan Alexander
UNITED STATES MAGISTRATE JUDGE